**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

THE BOARD OF REGENTS OF THE
NEW MEXICO SCHOOL FOR THE DEAF,
a New Mexico state educational institution,

      Plaintiff,

v.                                                         CV 06-01171 WJ/WDS

THE CITY OF SANTA FE, a New Mexico
municipal corporation,

      Defendant.

**ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION**

This matter is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition (PFRD) (Doc. 35) and the New Mexico School for the Deaf's objections thereto (Doc. 36). Having conducted a *de novo* review, I find NMSD's objections to be without merit for the following reasons.

**DISCUSSION**

The magistrate judge concluded that NMSD's claim under the Contracts Clause was unripe and recommended that it be dismissed without prejudice for lack of subject matter jurisdiction. (Doc. 35.) In light of the recommended dismissal of NMSD's Contracts Clause claim, the Magistrate Judge also recommended that NMSD's state law claims be dismissed without prejudice for lack of subject matter jurisdiction. (Doc. 35.) In its objections to the Magistrate Judge's PFRD, NMSD contends that its claims are "ripe for adjudication and properly before the court" and that because its federal and state law claims are ripe, "the court has pendent jurisdiction over NMSD's state law claims." (Doc. 36 at 1 & 7.)

**Ripeness of NMSD's Contracts Clause Claim**

"In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). To satisfy Article III's case and controversy requirement, a claim must present an "injury in fact." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). An injury in fact exists where an injury is "concrete and particularized and imminent or actual, as opposed to conjectural or hypothetical." *Roe #2 v. Ogden*, 253 F.3d 1225, 1229 (10th Cir. 2001). To satisfy the injury in fact requirement, a plaintiff must "allege concrete plans rather than mere 'some day intentions.'" *Verizon Wireless (VAW) v. City of Rio Rancho, NM*, 476 F. Supp. 2d 1325, 1332 (D.N.M. 2007) (quoting *Roe*, 253 F.3d at 1229).

The Magistrate Judge recommended that NMSD's Contracts Clause claim be dismissed because of NMSD's failure to "point to an imminent and concrete injury necessary to satisfy Article III's ripeness requirement." (Doc. 35 at 6.) The Magistrate Judge identified two specific problems with NMSD's claim under the Contracts Clause. First, the Magistrate Judge pointed out that "NMSD's allegation that the City has expressed an intention to apply the [Water Rights Transfer Ordinance (WRTO)] to the Dairy Site does not constitute an injury sufficient to meet Article III's" ripeness requirement. (Doc. 35 at 7.) Second, the Magistrate Judge observed that "[w]ithout an indication of the type of development sought at the Dairy Site . . . or the potential variances available to NMSD, it is impossible to determine the extent to which the WRTO applies to the proposed development of the Dairy Site and thus the extent to which the WRTO impairs, if at all, the City's commitments made in the Annexation Agreement." (Doc. 35 at 9.)

In their objections to the Magistrate Judge's PFRD, NMSD contends that "NMSD's frontal

challenge to the validity and constitutionality of the WRTO is fit for judicial review because it involves purely legal questions." (Doc. 36 at 2.) NMSD appears to argue that the mere enactment of the WRTO constitutes a substantial impairment of its contractual rights under the Annexation Agreement. NMSD contends that because the Annexation Agreement immunizes NMSD's development of the Dairy Site from City ordinances affecting its right to connect to City services, the City's expressed intention to apply the WRTO to the Dairy Site materially breaches NMSD's rights under the Annexation Agreement. (Doc. 36 at 3-4.) Similarly, NMSD contends that "without a judicial determination of NMSD's position and rights under the Annexation Agreement, and whether such rights are impaired by the WRTO, it is impossible for NMSD to assess the type of development that will constitute the highest and best use of its properties, given that the economics of any such project are not ascertainable." (Doc. 36 at 4.)

NMSD's challenges to the Magistrate Judge's PFRD lack merit for several reasons. First, NMSD's facial attack of the ordinance lacks merit due to the questions surrounding the WRTO's application to the Dairy Site. While the City appears to have expressed an intention to apply the WRTO to the Dairy Site, there is no indication, either from the City's representations or from the WRTO itself, of the scope or extent of this application.[1] Without an indication of the scope or extent

---

[1] Attached to its Objections NMSD provides two letters from its counsel to counsel for the City demanding an affirmative position from the City that the WRTO does not apply to NMSD. (Doc. 36 Ex. 1.) Even though it may be proper to consider such documents as part of an objection, the letters attached to NMSD's objections do not change the result reached in this case. *See Gonzales v. Qwest Commc'ns Corp.*, 160 F. App'x 688, 690 (10th Cir. 2005) ("When reviewing an objection to the magistrate judge's recommendation, 'the district court judge *may* . . . receive further evidence or recommit the matter to the magistrate judge with instructions.' The decision whether to accept further evidence after the magistrate judge's recommendation is therefore within the district court judge's discretion." (quoting 28 U.S.C. § 636(b)(1))); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) ("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."). Such informal communications between NMSD and the City do not serve as a substitute for a final and definitive position from the City regarding the WRTO's application to the Dairy Site.

of the WRTO's application to the Dairy Site, it is impossible for a court to resolve whether the WRTO substantially impairs NMSD's rights under the Annexation Agreement.

A claim under the Contracts Clause requires a plaintiff to demonstrate that a zoning ordinance "has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 243, 244 (1978). The ripeness inquiry under the Contracts Clause mirrors the ripeness inquiry under the Takings Clause. *Cf. Hallco Envtl. Inc., v. Comanche County Bd. of County Comm'rs*, No. 97-6083, 1998 U.S. App. LEXIS 12596, at *21-22 (10th Cir. June 10, 2008) (unpublished) (holding that plaintiff's Contracts Clause claim was "subsumed within the takings claim" because a "contrary holding would enable a resourceful litigant . . . to circumvent the ripeness requirements by artful pleading"). Under the Takings Clause, "The particular economic impact on the property and the extent to which the regulation interferes with reasonable investment-backed expectations for use of the property are factors that simply cannot be evaluated until there is a final, definitive decision regarding how it will apply to the particular property in question." *Hallco Envtl. Inc.*, 1998 U.S. App. LEXIS 12596, at *19. Thus, "a claim for an unconstitutional taking by a zoning ordinance or regulation [is] not [] ripe unless the plaintiff [obtains] a final definitive position from the local zoning authority regarding how it will apply the ordinance or regulation at issue to the particular land in question." *Amwest Invs. Ltd., v. The City of Aurora*, 701 F. Supp. 1508, 1514 (D. Colo. 1988). "This reasoning applies equally to claims for the unconstitutional impairment of a contractual obligation because in order to determine the extent of the purported impairment, if any exists, a court must consider the economic impact of the challenged action and the extent to which it interferes with the plaintiff's reasonable investment-backed expectations." *Id*. Such "factors simply cannot be evaluated until the local zoning authority

has arrived at a final, definitive position regarding how it will apply the ordinance at issue to the particular land in question." *Id*.

NMSD has not pointed to a final decision from the City regarding the WRTO's application to the Dairy Site. Although NMSD alleges that the City has expressed its intention to apply the WRTO to the Dairy Site, such informal representations do not provide sufficient factual development to resolve the "economic impact of the challenged action and the extent to which it interferes with the plaintiff's reasonable investment-backed expectations." *Id.*

Moreover, that NMSD must obtain a final decision from the City regarding the WRTO's application to the Dairy Site does not constitute the type of injury in fact that will satisfy Article III's ripeness requirement.[2] As the Magistrate Judge noted, the City's application procedure for a variance does not appear to impose a significant administrative or financial burden on NMSD. Without a final decision from the City, the court is unable to evaluate the economic impact of the WRTO on

---

[2] It is unclear whether the Contracts Clause permits a facial challenge to a legislative enactment absent a provision in the legislation that forecloses "an adequate damages or special performance remedy . . . ." *Charles v. Baesler*, 910 F.2d 1349, 1356 (6th Cir. 1990). As several courts recognize, "The distinction between an unconstitutional impairment of a contract and a breach of contract is whether the non-breaching party has an available remedy." *Pitsch Recycling & Disposal, Inc. v. The County of Ionia*, 386 F. Supp. 2d 938, 941 (W.D. Mich. 2005); *see also Yellow Cab Co. v. City of Chicago*, 3 F. Supp. 2d 919, 922 (N.D. Ill. 1998) (citing *Hays v. Port of Seattle*, 251 U.S. 233, 237 (1920)) ("The Supreme Court has distinguished between an unconstitutional impairment of a contract obligation and a breach of contract for purposes of claims brought under the *Contract Clause*."). It is likely that the Contracts Clause permits only as-applied challenges to the constitutionality of legislative enactments that do not foreclose a party's remedy for breach of contract. *Cf. Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n.10 (1997) (noting that facial challenges to Takings Clause claims are "generally ripe the moment the challenged regulation or ordinance is passed, but face an 'uphill battle' . . . since it is difficult to demonstrate that 'mere enactment' of a piece of legislation 'deprived the owner of economically viable use of his property.'" (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987) & *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 (1981))); *Sanitation and Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 992 (2d Cir. 1997) ("Because plaintiffs have chosen to raise their Contract Clause arguments in the context of a facial challenge to the statute, they bear a heavy burden . . . There are only two situations where a court may uphold a facial challenge: when plaintiff can demonstrate that the challenged law 'could never be applied in a valid manner,' . . . , or when First Amendment rights are at issue . . . ." (quoting *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988))).

NMSD's contractual expectations arising out of the Annexation Agreement. Despite its representations to the contrary, the City may ultimately decide to apply the WRTO in a manner inoffensive to NMSD's interpretation of its rights under the Annexation Agreement. The City may conclude that the WRTO does not apply to the Dairy Site. Similarly, the City may conclude that the WRTO facially applies to the Dairy Site, but, in light of the Annexation Agreement, may ultimately waive the WRTO's application to the Dairy Site. Lastly, the City's final decision regarding the WRTO's application to the Dairy Site may ultimately conform with NMSD's interpretation of its rights under the Annexation Agreement. Without a final, definitive resolution from the City, it is impossible to resolve whether the City, by enacting WRTO and applying it to the Dairy Site, has materially breached its obligations under the Annexation Agreement and whether such a breach constitutes a substantial impairment for purposes of the Contracts Clause inquiry.

NMSD's second argument is similarly without merit. According to NMSD, the Magistrate Judge "imposes a 'Catch-22' situation on NMSD, because without a judicial determination of NMSD's position and rights under the Annexation Agreement, and whether such rights are impaired by the WRTO, it is impossible for NMSD to assess the type of development that will constitute the highest and best use of its properties, given that the economics of any such project are not ascertainable." (Doc. 36 at 4.) According to NMSD, the inevitability of such financial costs triggers the particularized injury necessary to satisfy Article III's ripeness requirement. (Doc. 36 at 2.)

As the Magistrate Judge observed, without a concrete and particularized development plan, it is impossible to "determine the extent to which the WRTO applies to the proposed development of the Dairy Site and thus the extent to which the WRTO impairs, if at all, the City's commitments made in the Annexation Agreement." (Doc. 35 at 9.) NMSD's failure to submit a concrete and

particularized development plan renders speculative any judicial decision regarding the WRTO's application to, and potential breach of, the Annexation Agreement. Accordingly, I conclude that without additional factual development, NMSD's claim under the Contracts Clause remains conjectural and hypothetical and thus lacks the type of imminent or actual injury necessary to satisfy Article III's ripeness requirement.

**Supplemental Jurisdiction over NMSD's State Law Claims**

Because the Magistrate Judge was correct in concluding that NMSD's Contracts Clause claim be dismissed without prejudice for lack of subject matter jurisdiction, I conclude that the state law claims in NMSD's Complaint should also be dismissed for lack of subject matter jurisdiction. *See Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1167 (10th Cir. 2004) ("By retaining jurisdiction over the state law claims and non-diverse parties pursuant to § 1367 supplemental jurisdiction, the district court exceeded its authority. Here dismissing the federal tort claims and the federal defendant for lack of subject matter jurisdiction stripped the district court of its original jurisdiction.").

## CONCLUSION

IT IS THEREFORE ORDERED that:

1)   the Magistrate Judge's Proposed Findings and Recommended Disposition are adopted by the court (Doc. 35); and

2)   this case is dismissed without prejudice for lack of subject matter jurisdiction.

WILLIAM P. JOHNSON
UNITED STATES DISTRICT JUDGE